**In the Matter of SUNSTATE DAIRY & FOOD PRODUCTS COMPANY, Debtor.**

**ISALY KLONDIKE COMPANY, Plaintiff,**

**v.**

**SUNSTATE DAIRY & FOOD PRODUCTS COMPANY and Barclays Business Credit, Inc., Defendants.**

**Bankruptcy No. 92–2206–8B1.
Adv. No. 92–153.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 15, 1992.

Lynn Pope, Grand Rapids, Mich., for debtor.

J. Meridith Wester, Tampa, Fla., for Isaly Klondike Co.

Rufus Dorsey, IV, Atlanta, Ga., John J. Lamoureux, Tampa, Fla., for Barclay Business Credit, Inc.

Sharyn B. Zuch, Tampa, Fla., for Tampa Independent Dairy Farmers Asso.

Mark Wolfson, Tampa, Fla., for Borden, Inc.

ORDER DETERMINING RIGHTS AMONG RECLAIMING SELLER, DEBTOR, AND SECURED CREDITOR

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for final evidentiary hearing upon the Complaint and Verified Motion for Preliminary Injunction of the Isaly Klondike Company (Klondike) against Sunstate Dairy & Food Products Company (Debtor). Klondike is seeking to reclaim ice cream bars delivered to Debtor shortly before Debtor filed bankruptcy. In the event Debtor could not return the ice cream bars, Klondike requested a lien for the value of the ice cream bars or an administrative expense. Klondike also sought a preliminary injunction to restrain Debtor from using, consuming, commingling, or selling the ice cream bars or, in the alternative, an order requiring Debtor to segregate all proceeds from the use or sale of the ice cream bars until such time as this Court determined who is entitled to those funds.

On March 16, 1992, this Court entered an Order Denying the Isaly Klondike Company's Motion for Preliminary Injunction without prejudice and directing Debtor to segregate any cash proceeds received from the sale of the ice cream bars until such time as the Court determined the rights among Klondike, the reclaiming seller; Debtor; and Barclays Business Credit, Inc. (Barclays),[1] a secured creditor claiming an interest in the ice cream bars.

At the final evidentiary, Klondike, Debtor, and Barclays fully stipulated all contested facts. The Court, having heard argument of counsel and having reviewed the record and the memoranda and supplemental memoranda submitted by Klondike and Barclays, finds as follows:

On November 19, 1990, Debtor executed a Loan and Security Agreement granting Barclays a continuing security interest in and lien upon substantially all of Debtor's personal property, including all of Debtor's accounts receivable, general intangibles, chattel paper, inventory, and equipment, then existing or thereafter acquired. Barclays perfected its security interest in Debtor's property. On the date Debtor filed bankruptcy, Debtor was indebted to Barclays in the principal amount of $10,050,766.37 for loans made pursuant to the Loan and Security Agreement.

On February 14, 1992, Klondike delivered $49,512.24 worth of ice cream bars to Debtor. At that time, Debtor was insolvent. On February 19, 1992, Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C.). On February 21, 1992, Debtor received a letter from Klondike demanding the return of all Klondike products remaining in Debtor's inventory, including the ice cream bars delivered on February 14. When Debtor received Klondike's letter, Debtor had possession of $47,731.20 worth of ice cream bars. Since Debtor failed to return those ice cream bars in response to Klondike's written reclamation demand, on February 24, 1992, Klondike filed the instant adversary proceeding in an effort to regain possession of the ice cream bars or, in the alternative, to obtain a lien for the value of the ice cream bars or an administrative expense pursuant to Section 546(c) of the Bankruptcy Code.

In general, Section 546(c) of the Bankruptcy Code[2] preserves a seller's

---

1. As one of Debtor's secured creditors, Barclays filed a Motion to Intervene as Party Defendant in the instant adversary proceeding. That Motion was granted.

2. Section 546(c) of the Bankruptcy Code provides:

(c) ... the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

state law right to reclaim goods from a debtor in bankruptcy. In order to reclaim the ice cream bars from Debtor pursuant to Section 546(c), Klondike must establish:

1. a statutory or common law right to reclaim the ice cream bars,
2. Debtor's insolvency when it received the ice cream bars,
3. a written reclamation demand made within ten days after Debtor's receipt of the ice cream bars,
4. Debtor's possession of the ice cream bars at the time the written reclamation demand was received, and
5. diligent assertion of the right of reclamation.

*Tate Cheese Co. v. Crofton & Sons (In re Crofton & Sons)*, 139 B.R. 567 (Bankr. M.D.Fla.1992). *See also Flav–O–Rich, Inc. v. Rawson Food Serv. (In re Rawson Food Serv.)*, 846 F.2d 1343, 1347–1438 (11th Cir. 1988); *United States v. Westside Bank*, 732 F.2d 1258, 1265 (5th Cir.1984). The parties have stipulated Debtor's insolvency at the time the ice cream bars were received, Debtor's receipt of a timely written reclamation demand, and Debtor's possession of $47,731.20 worth of ice cream bars at the time the written reclamation demand was received. The parties have never disputed, and this Court specifically finds, Klondike diligently pursued any right of reclamation it might have by bringing this adversary proceeding within three days of making its reclamation demand. There-

fore, only the first requirement—that of Klondike's statutory or common law right to reclaim the ice cream—remains for decision by this Court.

■ Section 672.702(2) of the Florida Statutes [3] provides the statutory basis for Klondike's assertion of a right of reclamation. As stipulated, Klondike discovered that Debtor received the ice cream bars on credit while insolvent and made a reclamation demand within 10 days of Debtor's receipt of the ice cream bars. Section 672.-702(3) of the Florida Statutes,[4] however, limits any right of reclamation when there has been an intervening buyer in ordinary course or other good faith purchaser. Here, Klondike's right of reclamation is limited because Barclays qualifies as a good faith purchaser.[5]

■ Klondike does not really question whether Barclays became a good faith purchaser in 1990 when Debtor executed the Loan and Security Agreement. Klondike's argument is that denominating Barclays or any other lienholder with a preexisting, perfected floating lien on inventory as a good faith purchaser eviscerates the statutorily granted right of reclamation. Absent some showing of bad faith,[6] however, there is not much room to debate that a lienholder with a preexisting, perfected floating lien on inventory is a good faith purchaser with rights superior to those of a reclaiming seller. *See, e.g., Stowers v. Mahon (In re Samuels & Co.)*, 526 F.2d 1238,

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
(B) secures such claim by a lien.

**3.** Section 672.702(2) of the Florida Statutes provides:

Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt ...

**4.** Section 672.702(3) of the Florida Statutes provides:

The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this chapter ...

**5.** A purchaser is "a person who takes by purchase," (Fla.Stat. § 671.201(33) (1991)), and pur-

chase includes "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property" (Fla.Stat. § 671.201(32) (1991)). Good faith is "honesty in fact in the conduct or transaction concerned." Fla.Stat. § 671.201(19) (1991).

**6.** In its supplemental memorandum, Klondike alleges Barclays acted in bad faith because Barclays "obviously was involved in the planning of the Chapter 11 filing" since the motion for post-petition financing was filed only one day after the bankruptcy petition was filed. As an initial matter, Klondike raises this argument too late—all parties have stipulated all contested facts with respect to Klondike's reclamation action. Moreover, despite Klondike's allegation of fraud, Klondike has not sought equitable subordination of any claim Barclays might have. *See* 11 U.S.C. § 510(c).

1242–1243 (5th Cir.), *cert. denied,* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Lavonia Mfg. Co. v. Emery Corp.,* 52 B.R. 944, 946 (E.D.Pa.1985); *In re Diversified Food Serv. Distribs.,* 130 B.R. 427, 429 (Bankr.S.D.N.Y.1991). *See, also,* 4 *Collier on Bankruptcy,* ¶ 546.04 at 546–20—546–21.

Klondike attempts to avoid the limitation of Section 672.702(3) of the Florida Statutes arguing that a change in statutory language which predates this case removes Barclays from the ambit of Section 672.-702(3). Section 672.702(3) of the Florida Statutes formerly provided the reclaiming seller's right of reclamation was subject not only to the rights of a buyer in ordinary course or other good faith purchaser but also to the rights of a lien creditor. Since "or lien creditor" has now been removed from Section 672.702(3) of the Florida Statutes, Klondike contends its right of reclamation is not subject to Barclays' rights.

Klondike's contention is without merit. Despite the removal of "or lien creditor" from Section 672.702(3) of the Florida Statutes, Klondike's right of reclamation remains subject to Barclays' rights because Barclays, as stated above, qualifies as a good faith purchaser.

 Section 672.702(3) of the Florida Statutes, however, does not extinguish Klondike's right of reclamation but merely makes that right "subject to" Barclays' perfected preexisting lien. Neither party has cited, nor has this Court found, any Florida cases interpreting Section 672.-702(3). There are, however, non-Florida cases interpreting the precise section of the Uniform Commercial Code (§ 2–702(3)) now before the Court. " '[S]ubject to' … means the right is subordinate or inferior to the security interest …" *Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.),* 964 F.2d 842, 846 (8th Cir.1992). Section 672.702(3) of the Florida Statutes has the effect of placing Klondike's rights behind, or subject to, Barclays' rights in the collateral. *See In re Pester Ref. Co.,* 964 F.2d at 845.

This analysis comports with what would have happened outside bankruptcy. Had Debtor not filed bankruptcy, Klondike could have pursued a reclamation action in state court. Were Klondike successful in a state court reclamation action, Klondike could have regained possession of the ice cream bars, but those ice cream bars would have remained subject to the superior lien of Barclays.

In the instant case, were there no lien on the ice cream bars when Debtor took title, Klondike would have a right of reclamation. The existence of Barclays' lien does not alter this result. Klondike is still entitled to reclaim the ice cream bars, albeit Klondike takes the ice cream bars subject to Barclays' lien. This Court, however, frustrated Klondike's right to reclaim by permitting Debtor to sell the perishable ice cream bars.

 Section 546(c)(2) of the Bankruptcy Code provides a reclaiming seller may be denied reclamation only if the Bankruptcy Court grants the reclaiming seller an administrative expense priority or secures the reclaiming seller's claim by a lien. The case law to date is divergent on the measure of the reclaiming seller's remedy. One line of cases holds the reclaiming seller is given either an administrative expense or a lien on the debtor's property in the full amount of the valid reclamation claim; [7] the other line of cases holds the reclaiming seller is given either an administrative expense or a lien on the debtor's property only to the extent the value of the debtor's collateral exceeds the amount of the floating lien on the collateral. *Compare American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler Supply Group),* 74 B.R. 250, 254–255 (N.D.Ill.1987), *and In re Diversified Food Serv. Distribs.,* 130 B.R. at 430, *with In re Leeds Bldg. Prods.,* 141 B.R. 265, 270 (Bankr.N.D.Ga.1992); *Toshiba America, Inc. v. Video King, Inc. (In re Video King, Inc.),* 100 B.R. 1008, 1016–1017 (Bankr.N.D.Ill.1989); *and Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.),* 62 B.R. 315, 322–323 (Bankr.E.D.N.C.1986). This Court adopts the former view with the understanding the bankruptcy court has the

---

**7.** The valid reclamation claim would, of course, extend only to those goods in the debtor's possession when the reclamation demand is received.

authority under Section 546(c) to establish a lien on any property of the debtor, not just the property sold to the debtor by the reclaiming seller. The Court would not, however, grant a super priority lien under Section 546(c). *Western Farmers Ass'n v. Ciba Geigy (In re Western Farmers Ass'n)*, 6 B.R. 432 (Bankr.W.D.Wash.1980); *McCain Foods, Inc. v. Flagstaff Foodservice Co. New England (In re Flagstaff Foodservice Corp.)*, 14 B.R. 462 (Bankr. S.D.N.Y.1981).

█ In the instant case, since Barclays has a pre-petition lien on all of Debtor's collateral, the granting of a security interest may be a hollow victory unless marshalling or equitable subordination is available. Despite the virtual ineffectiveness of a secured claim, the award of an administrative expense under Section 546(c) is appropriate.

█ Section 546(c) merely recognizes that a statutory or common law right to reclaim goods can survive the bankruptcy. Section 546(c) does not expand Klondike's state law reclamation rights. *In re Pester Ref. Co.*, 964 F.2d at 842; *In re Video King, Inc.*, 100 B.R. at 1016; *In re FCX, Inc.*, 62 B.R. at 323. Once a right of reclamation is acknowledged in bankruptcy, Klondike has a right to obtain from this Court a lien or administrative expense award.[8] In this case and so many others, Klondike's rights in the goods have become subject to a superior lien. Since there appears to be no value left in Debtor's goods upon which a lien could attach, consideration must be given to the award of an administrative expense. The monies, representing the value of the ice cream bars at the time of the reclamation demand, which were segregated by this Court's previous order, are subject to Barclays' lien and shall be turned over to Barclays under the

cash collateral order operative in this case. The ice cream and its proceeds have been used for the benefit of Debtor in reducing its indebtedness and funding its Chapter 11 operation. Thus, the award of an administrative expense is appropriate.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the $47,731.20 segregated under this Court's previous order shall be turned over to Barclays under the cash collateral order operative in this case. It is further

ORDERED, ADJUDGED AND DECREED that Klondike is awarded an administrative expense in the amount of $47,731.20.

DONE AND ORDERED.

---

8. While some decisions hold that Section 546(c) creates no greater right for a reclaiming seller than it would have under state law, this fact could only be true as to the inquiry of whether there is a state right to reclaim. Clearly, the imposition of a lien or administrative expense is something beyond the normal state-granted remedy in such cases. Further, this Court does not agree that a valueless lien under Section 546(c) similarly destroys the right to an administrative expense. *See, Toshiba America, Inc. v.*

*Video King, Inc. (In re Video King Inc.)*, 100 B.R. 1008, 1017 (Bankr.N.D.Ill.1989). Such action is to throw the baby out with the bath water. The better policy is for the Court to make separate inquiries as to the granting of a lien or an administrative expense where reclamation would otherwise be allowed. *McCain Foods, Inc. v. Flagstaff Foodservice Co. New England (In re Flagstaff Foodservice Corp.)*, 14 B.R. 462, 467–468 (Bankr.S.D.N.Y.1981).